■ ST. LAWRENCE GAS COMPANY, INC., Respondent, v POWER CITY PARTNERS, L.P., Appellant. [705 NYS2d 439] —Cardona, P. J.

Appeal from an order of the Supreme Court (Demarest, J.), entered September 23, 1999 in St. Lawrence County, which denied defendant's motion for summary judgment, *inter alia*, dismissing the complaint.

Plaintiff is a public utility, regulated by the Public Service Commission (hereinafter PSC), which supplies natural gas to approximately 14,000 customers most of whom are residential users and small business owners classified as "firm" customers. By order of the PSC, plaintiff is precluded from interrupting gas service to its firm customers at any time. It may, however, curtail gas service to those customers receiving interruptible service in order to meet the gas needs of its firm customers.

Defendant is a Delaware limited partnership which owns an electric cogeneration facility fueled by natural gas in the Village of Massena, St. Lawrence County. In January 1991, plaintiff and defendant entered into a Natural Gas Transportation Agreement (hereinafter referred to as the contract) which provided, *inter alia*, that plaintiff would transport natural gas owned by defendant through plaintiff's pipeline to defendant's Massena facility and defendant would pay monthly and annual charges for the service. The contract further provided that defendant would make a certain amount of natural gas available to plaintiff during the peak usage period of December through March for diversion to plaintiff's firm customers in the event of curtailment or interruption of its gas service. In connection therewith, plaintiff agreed to credit defendant an annual reservation fee equivalent to $375,000 adjusted each year for inflation.

Prior to 1998, defendant sold the electricity generated from its Massena facility to Niagara Mohawk. In June 1998, however, this arrangement ended and the Massena facility stopped generating electricity, resulting in a significant reduction in the amount of natural gas flowing through plaintiff's pipeline. In December 1998, plaintiff gave defendant notice of its need for diversion gas under the contract. Defendant responded that, in view of the fact that less than the minimum threshold of gas (5,000 Mcf per day) was flowing under the terms of the contract, it did not have an obligation to deliver diversion gas to plaintiff. Plaintiff obtained the gas from another supplier and notified defendant that it breached the contract. In addition, it declined to credit defendant the annual reservation fee of $430,805.15 allegedly due for the 1998-1999 contract year.

In February 1999, plaintiff commenced this action seeking a declaration of the parties' rights and obligations under the

contract. Defendant served an answer with counterclaims alleging, *inter alia*, that plaintiff breached the contract. Thereafter, defendant made a motion for summary judgment on its breach of contract claim seeking recovery of the $430,805.15 annual reservation fee. Supreme Court denied the motion resulting in this appeal.

In support of its motion, defendant contends that the provisions of the contract are clear and unambiguous and require plaintiff to pay the annual reservation fee regardless of the fact that it did not supply diversion gas to plaintiff during the 1998-1999 peak usage period. Section 14, which specifically addresses diversion gas, states in pertinent part: "Subject to the limitations set out in Section 3 of this Agreement, during periods of interruption or curtailment ordered by [plaintiff] for reasons other than Force Majeure during the Months of December, January, February and March of each Contract Year, [defendant], if requested by [plaintiff], shall be obligated to deliver to [plaintiff] at the Import Point a volume of natural gas of up to 15,000 Mcf per Day. * * * For [defendant's] obligation to make available to [plaintiff] during Days of interruption or curtailment the volumes of natural gas stated above, [plaintiff] shall credit to [defendant] on the first monthly bill of each Contract Year the sum of $375,000, adjusted * * * by the percentage change in the Implicit Price Deflator for Gross National Product published as final and applicable to the immediately preceding calendar year." Insofar as is relevant here, section 3 provides that:

"[Plaintiff] will curtail or interrupt its transportation service only (1) for events of Force Majeure or (2) to the extent necessary to maintain safe, adequate and continuous service to its firm customers and only (3) with respect to volumes in excess of 5,000 Mcf of natural gas delivered by [defendant] to [plaintiff] for transportation on any Day."

We find that the above provisions are ambiguous in reference to plaintiff's obligation to pay the annual reservation fee when no diversion gas is supplied by defendant. For example, on the one hand, by using the language "[f]or [defendant's] obligation to make available to [plaintiff] during Days of interruption or curtailment the volumes of natural gas stated above", section 14 suggests that the annual reservation fee is a quid pro quo for defendant standing ready and willing to supply diversion gas. On the other hand, it may be contended that there is an absence of specific condition precedent language in section 14 providing that defendant's obligation to make diversion gas available must be established before plaintiff is obligated to credit the annual reservation fee.

Section 3 is similarly unclear. By limiting plaintiff's request for diversion gas to "volumes in excess of 5,000 Mcf of natural gas delivered by [defendant] to [plaintiff] for transportation on any Day", it may be argued that section 3 implies that the flow of a minimum amount of gas in plaintiff's pipeline is a prerequisite to defendant's obligation to supply diversion gas in the first instance. There is nothing, however, in section 3 explicitly providing that there must be at least 5,000 Mcf of natural gas flowing in plaintiff's pipeline in order to trigger defendant's obligation to supply diversion gas.

The ambiguity in the contractual provisions involved herein present factual issues concerning the parties' intent which cannot be resolved on a motion for summary judgment (*see, Dobco, Inc. v Facilities Dev. Corp.*, 263 AD2d 592, 593; *Konik v Anesthesia Assocs.*, 128 AD2d 933, 934). Therefore, Supreme Court properly denied defendant's motion. Furthermore, for the same reason, we conclude that plaintiff is not entitled to summary judgment.

Crew III, Spain, Carpinello and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.